UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANA D. RICHARDSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:15-CV-0708

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Dana Richardson seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 31 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.52, 80–81.) She left school in the ninth grade, but subsequently obtained a GED, and was previously employed as a babysitter. (PageID.83, 113.) (PageID.78, 105–06.) Plaintiff filed for benefits on October 7, 2011, alleging that she had been disabled since February 1, 2000, due to depression, social anxiety, PTSD, OCD, allergies, carpal tunnel syndrom, sickle cell trait,

dyslexia, and ADD. (PageID.124, 136, 217–29.) Plaintiff's applications were denied on February 7, 2012, after which time she requested a hearing before an ALJ. (PageID.121–23, 156–58.) On November 19, 2013, Plaintiff appeared with her counsel before ALJ Susan Wakshul for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.73–119.) At the hearing, Plaintiff's counsel indicated that Plaintiff would likely amend her alleged onset date, and did so in a letter dated November 25, 2013. Plaintiff's alleged onset date was subsequently amended to January 27, 2010.[1] (PageID.300.) In a written decision dated January 10, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.52–72.) On May 7, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[1] In addition to filing for DIB and SSI, Plaintiff also filed an application for child disability benefits. (PageID.234–40.) In the same letter amending her onset date, Plaintiff withdrew this application. (PageID.300.)

[2] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

### 1. The ALJ's DIB Analysis.

The ALJ found that for purposes of Plaintiff's DIB claim, Plaintiff's claim failed at the second step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (PageID.58.) At the second step, the ALJ determined that through Plaintiff's date last insured of June 30, 2010, Plaintiff had the following medically determinable impairments: (1) depression; (2) anxiety; and (3) substance abuse. (PageID.58.) The ALJ determined, however, that these were not severe impairments because they did not significantly limit (or were expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months before her date last insured. (PageID.58.) Having

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

4

found that Plaintiff's claim failed at the second step, the ALJ ended her analysis of the DIB claim and found that Plaintiff was not disabled through her date last insured.[3]

### 2. The ALJ's SSI Analysis.

Regarding Plaintiff's SSI claim, the ALJ determined that Plaintiff would be found disabled at step three, but that Plaintiff's substance abuse was a contributing factor to her disability, and that if Plaintiff's stopped the substance abuse, her claim would fail at the fifth step of the evaluation. The ALJ began by noting that Plaintiff had not engaged in substantial gainful activity since her application date. (PageID.58.) At the second step, the ALJ found that as of the application date, Plaintiff had the severe impairments of depression, anxiety, and marijuana addiction. (PageID.60.) At the third step, the ALJ found that these impairments, which included the substance use disorder, met sections 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App.1. (PageID.60–62.)

After reaching this determination, the ALJ reviewed Plaintiff's claim without consideration of limitations caused by her substance use. *See* 20 C.F.R. § 404.1535(a) ("[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability"); *Siemon v. Comm'r of Soc. Sec.*, 72 F. App'x 421, 422 (6th Cir. 2003) ("the social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material for a finding of disability").

---

[3]To be eligible for Title II benefits, a claimant must establish that she became disabled prior to the expiration of her insured status, here June 30, 2010. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

5

At the second step, the ALJ found that if Plaintiff stopped the substance use, she would still have severe impairments due to her depression and anxiety. (PageID.62–63.) At the third step, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 12.04, 12.06, and 12.09. (PageID.63–64.) At the fourth step, the ALJ found that if Plaintiff stopped the substance use, she would have the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive tasks with occasional and superficial interaction with others. Moreover, she is limited to low stress work, which is defined as no strict production paced work or quotas, occasional changes to work setting, occasional use of judgment and occasional decision making.

(PageID.64.) The ALJ also found that if Plaintiff stopped the substance use, she would be unable to perform her past relevant work. (PageID.66.)

At the fifth step, the ALJ determined that if Plaintiff stopped the substance use, she could perform a significant number of unskilled, medium, light, or sedentary jobs in the national economy. (PageID.67–68.) Specifically, Plaintiff could perform the following work in the State of Michigan: janitory/sweeper (40,000 jobs in Michigan, 1,500,000 jobs in the nation), housekeeping / cleaners (11,000 jobs in Michigan, 430,000 jobs in the nation), and assembler (9,000 jobs in Michigan, 229,000 jobs in the nation). (PageID.67–68, 114–15.) Based on this record, the ALJ found that if Plaintiff stopped the substance use, she would be capable of making a successful, adjustment to work that exists in significant numbers in the national economy and would be found not disabled. (PageID.68.)

The ALJ concluded that the substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance abuse. (PageID.68.) (citing 20 C.F.R. §§ 416.920(g) and 416.935). Accordingly, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from October 7, 2011, through January 10, 2014 (the date of decision).

## DISCUSSION

**1.     Medical Opinions.**

On June 5, 2012, Ms. Shelly Phelps, MA, a limited licensed psychologist, filled out a check-box worksheet regarding Plaintiff's mental RFC. On the form. Ms. Phelps remarked that Plaintiff would have several moderate and marked limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (PageID.628–29.) Ms. Phelps commented that although Plaintiff was making "small amounts of progress" she was "limited to accepting change," and that "fear of other people causes distress." Ms. Phelps further noted that it was a challenge for Plaintiff to attend weekly appointments. (PageID.629.) Ms. Phelps also provided a letter to Plaintiff's attorney, dated August 30, 2012. In it, she assigned Plaintiff a GAF of 25,[4] and noted that Plaintiff "has severe depression symptoms in which she is unable to function at minimal capacity daily. Her severe panic episodes and anxiety symptoms interfere with her ability to have [sic] communicate [or] interact, and cause decompensation daily. This includes her inability to work or maintain employment." (PageID.749.)

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed.1994). A GAF score of 25 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas." *Id.* at 34.

On October 31, 2013, Mr. William Davis, a nurse practitioner, also filled out a checkbox worksheet regarding Plaintiff's mental RFC. Among other things, the completed form indicated that Plaintiff was unable to meet competitive standards[5] regarding the ability to maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (PageID.845.) Plaintiff further had extreme difficulties in maintaining social functioning, as well as in maintaining concentration persistence, or pace. (PageID.846.) Plaintiff could be expected to be absent from work more than four days per month. (PageID.847.) Finally, the opinion stated that Plaintiff's substance abuse did not contribute to any of the above limitations. (PageID.847.) The completed form was co-signed by Dr. Gopal Bedi, a psychiatrist at Kalamazoo Community Mental Health who, according to Plaintiff, supervised Mr. Davis. (PageID.847.) The record does not indicate that Dr. Bedi ever personally treated Plaintiff.

On November 11, 2013, Mr. Davis provided a statement to Plaintiff's attorney that explained the above opinion. He noted his rationale was that Plaintiff's "suicidal thoughts are what she describes as nearly continuous. Severe levels of anxiety . . . prevent her from even leaving the house except she comes out for appointments, she is able to deal with her family who basically has to come over to visit her. She won't go see them. So I just don't see her as being capable of handling the work environment." (PageID.852.) Regarding his opinion on the impact of Plaintiff's substance abuse, Mr. Davis admitted Plaintiff's functioning would be "somewhat better" if she

---

[5]The form defined this limitation as having "noticeable difficulty . . . from 21 to 40 percent of the workday or work week." (PageID.845.)

ceased her marijuana use, but that "I don't think that she would improve beyond my ratings in the RFC if she totally abstained." (PageID.852.)

The ALJ discussed the above opinions at several points in her decision. In finding that Plaintiff's impairments, including her substance abuse, met the requirements of the listings, the ALJ assigned the above opinions "great weight." (PageID.62.) But in her discussion that, if Plaintiff ceased the substance use, Plaintiff would have an RFC for a full range of work with some nonexertional limitations, the ALJ gave the opinions "no weight." (PageID.66.) The ALJ especially noted Mr. Davis' opinion that Plaintiff's limitations would remain even if she were to cease the substance use, was not supported by the record. (PageID.66.) At bottom, Plaintiff contends that the ALJ did not properly weigh the above opinions as required by SSR 06–03p, which addresses "opinions and other evidence from sources who are not 'acceptable medical sources' in disability claims." *See* SSR 06–03p, 2006 WL 2329939 (SSA, Aug. 9, 2006).[6]

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."

---

[6] SSRs "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson*, 378 F.3d at 544). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 375–76. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion,

(4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x. 448, 450 (5th Cir., Jan.19, 2007).

Here, as Plaintiff concedes, neither Mr. Davis nor Ms. Phelps, is considered either a "treating source" or an "acceptable medical source." (PageID.861.) ("The ALJ did not give appropriate weight to the 'other source' opinions of Bill Davis, N.P., and Shelly Phelps, M.A., T.L.L.P."); *see also* 20 C.F.R. §§ 404.1502, 416.902 (defining an "acceptable source" as a source described in 20 C.F.R. §§ 404.1513(a), 416.913(a), who provides evidence about your impairments, i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). A treating source who is not an "acceptable medical source" is deemed an "other source." *See* 20 C.F.R. §§ 404.1513(d) and 416.913(d). An other medical source may provide probative evidence, but is due no special deference. *See* 20 C.F.R. §§ 404.1513(d) and 416.913(d) ("we may also use evidence from other sources to show the severity of your impairment(s)").

In SSR 06–03p, the agency explained the need to differentiate between the opinions given by an acceptable medical source and other health care providers:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as

11

> defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

SSR 06–03p, 2006 WL 2329939 at *2. Because Mr. Davis and Ms. Phelps are not acceptable medical sources, the ALJ was not required to provide good reasons for the weight given to their opinions under §§ 404.1527(d)(2), 416.927(d)(2). *See Smith*, 482 F.3d at 876; *Wilson*, 378 F.3d at 545; *Burke ex rel*. A.R.B., 2008 WL 1771923 at *7.

Nevertheless, SSR 06–03p provides that the Commissioner should evaluate the opinions expressed by other medical sources on "key issues":

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939 at *3.

Plaintiff first argues, however, that the opinion of Mr. Davis should be considered that of an acceptable source due to the addition of Dr. Gopal Bedi's signature on the opinion. According to Plaintiff, the ALJ "failed to address" Dr. Bedi's opinion (PageID.872–74.) But as demonstrated above, the ALJ in fact did discuss this opinion at several points in the decision. What is true is that the ALJ attributed this opinion only to Mr. Davis, and did not mention that Dr. Bedi had co-signed

the form. But Plaintiff fails to explain how the lack of attribution violates the requirement that the Commissioner evaluate every medical opinion she receives. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). There is no record of any treatment provided by Dr. Bedi, and adding Dr. Bedi's signature to Mr. Davis' statements "did not transform those opinions into the opinions of a treating physician." *See Fletcher v. Astrue*, No. 1:11-cv-1100, 2013 WL 4500334, at * 9 (W.D. Mich. Aug. 21, 2013). While Plaintiff appears to argue that Dr. Bedi's signature should elevate the opinion from that of an "other source" to an "acceptable source," *see* 20 C.F.R. §§ 404.1513(a), (d)(1); 416.913(a), (d)(1), she fails to explain how the ALJ's discussion of the opinion, even if considered from that of an acceptable source, is deficient. Moreover, even if Dr. Bedi's adoption of Mr. Davis' assessment is characterized as Dr. Bedi's "opinion," the Court finds any error to be harmless. As Dr. Bedi did not sign onto Mr. Davis' accompanying explanation, his unsupported check-box opinion is "weak evidence at best." *See Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir., Mar. 17, 2016). Thus to the extent Plaintiff argues the ALJ failed to consider the opinion as one from an acceptable source, such claim is rejected.

Accordingly, the ALJ evaluated Mr. Davis' and Ms. Phelps' opinions as required by SSR 06–03p. Contrary to Plaintiff's assertion, because Mr. Davis and Ms. Phelps were not acceptable sources, the ALJ was not required to assess their opinions under the factors articulated above. *See, e.g., Gayheart*, 710 F.3d at 378 ("[t]he factors set forth in 20 C.F.R. § 404.1527 . . . apply only to medical opinions from acceptable medical sources"). Instead, the ALJ is required simply to "consider" statements from other sources. *Id.* (quoting SSR. 06–03p). The ALJ considered Mr. Davis' and Ms. Phelps' statements and found that in assessing Plaintiff without consideration of the substance use, the opinions were inconsistent with the record:

13

> Although Mr. Davis opined that the claimant's debilitating symptoms would persist even if she stopped using marijuana, the evidence shows that when the claimant reduced her marijuana usage, her symptoms improved. Moreover, when she followed prescribed treatment, she was described as stable and her mental status examinations were within normal limits. The record shows that when she was not taking medication and/or missed therapy appointments, she experienced an exacerbation in symptoms and her GAF ratings were lower. I note that the claimant enjoys crossword puzzles, watches television, use[s] the computer for online classes, occasionally babysits and cares for her own children. While she testifies that she is unable to be around people or concentrate, she remains capable of engaging in these activities on a consistent basis.

(PageID.66.) The ALJ's reasoning is supported by substantial evidence. Treatment notes from January 2010 through September 2011 indicate that Plaintiff was able to regularly take her medication, and in doing so, generally reported improvement. During this period she was regularly assigned GAF scores of 60 or 65.[7] (PageID.607, 611, 646–47, 651–52, 654–55, 670–71, 673, 679, 682, 692.) On September 1, 2011, Plaintiff indicated that she felt she was doing OK and that her anxiety was controlled with medication. Plaintiff also reported she had cut down on her marijuana use. (PageID.611.) Thereafter, as the ALJ noted, Plaintiff did not regularly attend therapy sessions or take her medications. Consequently, Plaintiff generally reported a worsening state of mind, and Plaintiff was assigned lower GAF scores ranging from 39–55. (PageID.806, 808, 815, 817, 824, 826, 827, 829, 840.) Plaintiff reported, however, that when she took her medications, they had been effective. (PageID.827–29, 840.) Regarding her daily activities, Plaintiff testified that prior to the

---

[7] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." A GAF score of 65 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV–TR at 34.

hearing she babysat her neighbor's children, but ended the arrangement the week before. (PageID.83–84.) Mr. Davis noted that Plaintiff was taking online classes, but that her substance use was interfering with ability to go back to school. (PageID.806.) Plaintiff testified that she enjoys crossword puzzles, and watches televison and movies with her children, although she generally doesn't finish a two hour movie before beginning something else. (PageID.103–04.) The Court finds the discussion here to be supported by substantial evidence, especially in light of the minimal requirements for discussing other source opinions. The Court does not doubt that even if Plaintiff ceased her substance use, she would have limitations, but such limitations are adequately accounted for in the RFC. Accordingly, Plaintiff's claim of error regarding the opinions of Mr. Davis and Ms. Phelps is rejected.

    **2.  RFC Discussion.**

    Plaintiff next claims that "the RFC is not based on substantial evidence because the ALJ did not address Plaintiff's obsessive compulsive disorder (OCD), her panic attacks, her inability to obtain adequate sleep due to nightmares and problems falling asleep, or the side effects of her medications. (PageID.878.) Plaintiff, however, fails to develop these arguments in her brief. Rather, Plaintiff simply announces her position with no connection to the facts at issue or supporting case law. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997). Accordingly, the Court deems these arguments waived.

Even if the Court were to cobble together an argument for Plaintiff, such an argument would fail. To the extent Plaintiff argues that the ALJ failed to consider her non-severe limitations in the RFC, any error would be harmless. The Commissioner has noted that:

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 at *5 (July 2, 1996). In this case, the ALJ began her discussion by noting her obligation to consider both severe and non-severe impairments in formulating the RFC. (PageID.57, 64.) In addition, the ALJ explicitly discussed Plaintiff's panic attacks (PageID.60) and difficulty sleeping. (PageID.64.) Although the ALJ may not have specifically identified all non-severe impairments, there is no indication the ALJ did not consider them. Moreover, Plaintiff fails to show that these impairments impacted her work-related functioning in any way beyond the limitations included in her RFC. No physician ever opined or suggested that these conditions significantly affected Plaintiff's functioning. In fact, the record supports the opposite conclusion. For example, on February 22, 2013, Mr. Davis found that Plaintiff's "obsessive compulsive tendencies are basically under control." (PageID.820.) Plaintiff has failed to offer any proof that these alleged impairments are inconsistent with her RFC, and accordingly the argument is rejected.

Plaintiff's argument regarding the ALJ's treatment of her side effects also fails. In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to

16

which those symptoms limit a claimant's capacity for work, the Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004). At the hearing, the ALJ inquired into Plaintiff's side effects from medications. Plaintiff responded that she experienced sleepiness, weight gain, shakes, sweats, and hallucinations. (PageID.89.) The ALJ's failure to provide a discussion regarding Plaintiff's alleged side effects is well noted, however Plaintiff's claim is deficient in that she fails to provide objective medical evidence in support of her claim. The evidence pointed to elsewhere in her brief (PageID.878), does not indicate any functional limitations beyond that found in the RFC. For example, Plaintiff complained of sweats and weight gain. Mr. Davis, however, indicated that he did not believe Plaintiff's weight gain was due to medication, and Plaintiff indicated that her sweats were not severe enough to warrant a change in her medication. (PageID.801–02.) Furthermore, none of the evidence relied on by Plaintiff indicates that she experienced hallucinations due to her medications. Indeed a treatment note indicates that mediation reduced her vivid dreams. (PageID.806.) When Plaintiff complained that some medication was making her drowsy, the dosage was decreased. (PageID.820.) Accordingly, Plaintiff can show no harmful error regarding the ALJ's failure to more fully discuss her side effects.

      For all the above reasons, Plaintiff's claim of error is denied.

**CONCLUSION**

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.


Dated:     July 5, 2016              /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE